IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ROBIN L. STRAWHACKER                                        PLAINTIFF

v.                      CIVIL NO. 16-5139

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration[1]             DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Robin L. Strawhacker, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") under the provisions of Title XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. <u>See</u> 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff received SSI benefits based on disability as a child. (ECF No. 10, pp. 21, 70). Plaintiff's eligibility for receipt of SSI benefits was reexamined under the rules for determining disability in adults when she attained the age of eighteen (18). (ECF No. 10, pp. 21, 68-72). On June 12, 2013, the Commissioner determined Plaintiff was no longer disabled as of June 1,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

2013. (ECF No. 10, pp. 68-72). A disability hearing officer upheld the ruling following a hearing on January 3, 2014. (ECF No. 10, pp. 80-103).

Thereafter, Plaintiff requested an administrative hearing and this hearing request was granted. (ECF No. 10, pp. 105-44). Plaintiff's administrative hearing was held on October 15, 2014, in Fayetteville, Arkansas (ECF No. 10, pp. 40-67). Plaintiff appeared in person and without attorney counsel. Id. Plaintiff, Plaintiff's grandmother and former guardian Elda Jean Faulkner, and Vocational Expert ("VE") Larry Seifert testified at this hearing. Id. At the time of this hearing, Plaintiff was nineteen (19) years old, which is defined as a "younger person" under 20 C.F.R. § 416.963(c). As for her level of education, at the time of the hearing Plaintiff was still a senior in high school due to the amount of school she missed before her leukemia entered remission. (ECF No. 10, pp. 44-45).

After this hearing, on January 14, 2015, the ALJ entered an unfavorable decision affirming cessation of Plaintiff's SSI benefits. (ECF No. 10, pp. 18-32). In this decision, the ALJ found Plaintiff attained the age of eighteen (18) on February 15, 2013 and was eligible for SSI benefits as a child for the month preceding the month in which she attained age eighteen (18) and that she was found no longer disabled as of June 1, 2013, after reevaluation of disability under the rules for adults who file new applications. (ECF No. 10, p. 23, Finding 1). The ALJ determined Plaintiff had the following severe impairments: leukemia in remission; recurrent sinusitis; amnestic disorder; cognitive disorder; and, depression. (ECF No. 10, p. 23, Finding 2). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 10, pp. 23-26, Finding 3).

2

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 10, pp. 26-31, Finding 4). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform "light work as defined in 20 C.F.R. § 416.967(b) except that she can only do work limited to simple, routine and repetitive tasks involving only simple, work related decisions with few, if any, workplace changes and no more than incidental contact with coworkers, supervisors, and the general public." Id. The ALJ then determined Plaintiff had no Past Relevant Work ("PRW"). (ECF No. 10, p. 31, Finding 5). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as an office helper, a mail room sorter, and a merchandise marker. (ECF No. 10, pp. 31-32, Finding 9). The ALJ therefore determined Plaintiff's disability ended on June 1, 2013, and that Plaintiff had not become disabled again since that date. (ECF No. 10, p. 32, Finding 10).

Thereafter, Plaintiff requested a review by the Appeals Council (ECF. No. 10, p. 17). The Appeals Council denied this request on April 19, 2016. (ECF No. 10, pp. 6-11). On June 14, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The parties consented to the jurisdiction of this Court on June 28, 2016. (ECF No. 6). This case is now ready for decision.

## II. Applicable Law:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th

Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the

national economy given his age, education, and experience. See 20 C.F.R. § 416.920(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920(a)(4)(v).

### III. Discussion:

Plaintiff raises three issues on appeal: 1) Substantial evidence does not support the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments; 2) Substantial evidence does not support the ALJ's RFC determination; and 3) The hypothetical question posed to the VE and adopted by the ALJ failed to account for all of Plaintiff's limitations.

#### A. The Listings

The claimant bears the burden of proving her impairment meets or equals the criteria for a specific listing. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Brown ex rel. Williams v. Barnhart, 388 F.3d 1150, 1152 (8th Cir. 2004)(internal quotations and citation omitted). Where the claimant suffers from an unlisted impairment, the ALJ must compare the claimant's impairment with an analogous listed impairment. 20 C.F.R. § 416.926. Furthermore, the question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). While it is preferable an ALJ address a specific listing, the failure to do so is not reversible error if the record supports the overall conclusion.

See Pepper ex rel. Gardner v. Barnhart, 342 F.3d, 853, 855 (8th Cir. 2004), Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001); see also Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record.").

First, Plaintiff contends her impairments meet or medically equal the criteria of Listing 3.02(A). Listing 3.02(A) requires a forced expiratory volume (FEV1) value less than or equal to the value specified in Table I of the listing corresponding to Plaintiff's height without shoes. 20 C.F.R. pt. 404, Subpt. P, app. 1, § 3.02(A). Plaintiff does not cite to nor does the record contain recent spirometry reports containing an FEV1 value. Plaintiff contends that the lack of such a record amounts to a failure to fully and fairly develop the record by the ALJ. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. Whitman v. Colvin, 762 F.3d 701, 707 (8th Cir. 2014) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted). Although the ALJ determined Plaintiff's recurrent sinusitis was a severe impairment, the record shows the impairment did not result in more than mild or moderate respiratory impairment. For example, Plaintiff visited Dr. Payton on April 2, 2013, for sinus pressure, but Dr. Payton made no objective findings regarding Plaintiff's respiration. (ECF No. 10, p. 955).

Dr. Payton did make objective findings regarding Plaintiff's respiration on November 28, 2012, and March 7, 2013, when Plaintiff complained of sinus problems, but Dr. Payton's physical examination revealed only normal findings in this area. (ECF No. 10, pp. 812, 819). Although the record does not contain a recent spirometry report, Plaintiff regularly followed-up with her healthcare providers and we can assume Plaintiff's healthcare providers would have conducted such testing were it necessary for her continued care.

The ALJ had before him the evaluations and treatment records of numerous healthcare providers which provided sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's alleged impairments. The Court also notes that other evidence in the record, including Plaintiff's own statements, constituted evidence regarding her limitations, and that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding whether Plaintiff's impairments met or medically equaled the severity of Listing 3.02(A). The Court therefore finds the ALJ satisfied his duty to fully and fairly develop the record and that substantial evidence supports the ALJ's determination with regard to Listing 3.02(A).

Next, Plaintiff argues her impairments meet or medically equal the criteria of Listings 12.02, 12.04, and 12.07. The ALJ considered evidence of Plaintiff's listed mental impairments and concluded that there was no showing on the record that Plaintiff's impairments met or are equivalent to any of the listed impairments. Listings 12.02, 12.04, and 12.07 share the same paragraph "B" criteria. 20 C.F.R. pt. 404, Subpt. P, app. 1, §§ 12.02, 12.04, 12.07. For Listings 12.02 and 12.04, Plaintiff could alternatively satisfy the paragraph "C" criteria. Id. To meet the paragraph "B" criteria, Plaintiff's impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social

functioning; marked difficulties in maintaining concentration, persistence, or pace, or; repeated episodes of decompensation, each of extended duration. Id.

Plaintiff does not meet the paragraph "B" criteria of listings 12.02, 12.04, or 12.07. At the outset, this Court notes that, as to periods of decompensation, the record does not indicate Plaintiff's impairments have caused any episodes of decompensation of extended duration, in recent years. The ALJ determined Plaintiff's impairments resulted in only a mild restriction in Plaintiff's activities of daily living. The ALJ accepted Plaintiff's function report, completed by Hiedi Oliver, which indicated she had some difficulty with personal care and personal chores, but that she was able to prepare simple meals, go out alone, and shop in stores. (ECF No. 10, pp. 24, 218-25). The ALJ also noted the remarks of Kim Oliver, Plaintiff's teacher, on her teacher questionnaire. (ECF No. 10, pp. 24, 195-202). Ms. Oliver indicated Plaintiff's reading and math abilities were appropriate for her level and that she did not receive special education services. (ECF No. 10, p. 195). Ms. Oliver gave Plaintiff high marks in the area of acquiring and using information and noted Plaintiff "is completely capable of all these skills," and described Plaintiff as "a bright young lady." (ECF No. 10, p. 196).

The ALJ determined Plaintiff had moderate difficulties in social functioning, based in part on Ms. Oliver's report but also based on Plaintiff's function report, completed by Elda Faulkner, which indicated Plaintiff kept to herself and became easily agitated. (ECF No. 10, pp. 24, 172-79). The ALJ also accepted the results of a Behavior Assessment System for Children – Second Edition (BASC-II) test administered by Dr. McInroe, which indicated Plaintiff had moderate limitation in this area. (ECF No. 10, p. 24, pp. 1129-133). Ms. Oliver indicated Plaintiff had no problem attending and completing tasks. (ECF No. 10, p. 197). Ms. Oliver further indicated Plaintiff was "very immature" and that "other students have trouble

relating to her." (ECF No. 10, p. 198). Nevertheless, Ms. Oliver described Plaintiff as "bright" and stated she "could be more successful, if not for excessive absences," and that she does interact with her peers, but in an immature manner. (ECF No. 10, p. 202).

The ALJ also determined Plaintiff's impairments resulted in moderate limitations in her concentration, persistence or pace. (ECF No. 10, p. 24). The ALJ accepted Plaintiff's testimony and the Function Report completed by Ms. Faulkner, which indicated that Plaintiff's short-term memory retention was poor, and she had to do a task multiple times before she understood it. (ECF No. 10, pp. 24-25). The ALJ also noted, however, that Plaintiff was in regular classes and not receiving special education services. Id. The ALJ also accepted the opinion of Dr. McInroe who stated Plaintiff "exhibits deficits in short-term auditory memory and consolidation into longer-term memory. She also exhibits mild to moderate deficits in visual spatial memory." (ECF No. 10, pp. 25, 1133).

Plaintiff does not meet the paragraph "C" criteria of listings 12.02 or 12.04. The ALJ specifically considered the paragraph "C" criteria of Listings 12.02 and 12.04 and in each instance determined that Plaintiff's impairments did not: cause more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support; repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause Plaintiff to decompensate, or; a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." (ECF No. 10, p. 25). Plaintiff contends the fact that Plaintiff still attends high school and lives with her grandmother and former guardian that she satisfies the paragraph "C"

criteria of listings 12.02 and 12.04. The record contains no evidence, however, that Plaintiff remains the ward of her former guardian. The ALJ also determined that Plaintiff was still in high school because Plaintiff missed so much school because of her treatment for leukemia, which had been in remission for five years at the time of the administrative hearing. (ECF No. 10, p. 28). Although Plaintiff cites thirty-three (33) school absences for medical reasons, Plaintiff's teacher indicated seventeen (17) absences were excused for medical reasons and sixteen (16) absences were unexcused. (ECF No. 10, p. 195). Although, by any standard, Plaintiff has missed a substantial amount of school, this Court notes that the record does not contain any evidence of extended periods of decompensation.

Based on the foregoing, The Court finds the ALJ met his duty when he considered the evidence of the listed impairments and concluded that there was no showing on the record that the claimant's impairments met or are equivalent to any of the listed impairments. Accordingly, I find substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or medically equal the criteria of any of the Listings.

### B.     RFC Determination

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945. It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's

determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

At the outset, Plaintiff argues the ALJ failed to take into consideration a visual impairment. (ECF No. 11, pp. 2-3). Plaintiff does not cite, nor does the record contain evidence Plaintiff sought treatment for disabling vision problems. See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Plaintiff contends the ALJ failed to fully and fairly develop the record in this regard, and this contention represents a significant portion of Plaintiff's argument with regard to the ALJ's RFC determination. As stated previously, the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. Whitman v. Colvin, 762 F.3d 701, 707 (8th Cir. 2014) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Plaintiff and the ALJ had the following exchange at the administrative hearing:

> Q     Now before we get started, I – I talked to you about if you wanted to get an attorney. You told me you thought you wanted to go ahead and proceed without one. Is that still what you think?
>
> A     Yes, sir.
>
> Q     Okay. Have you all tried to get one?
>
> A     Yes, and they've told me and my grandmother that they will not represent us –
>
> Q     Okay.

11

A       -- or me I should say.

(ECF No. 10, pp. 43-44). After the ALJ had a brief discussion with Plaintiff regarding the reasons why an attorney may decided not to represent her, they had the following exchange:

Q       Okay. All right. Let me – I just want to – I want to make sure you understand your legal rights and I want to go through this real quick because I want to be – be careful and that. That's very important. Just listen up and if you have any questions when I'm done, we'll talk about it.

You have the right to be represented by an attorney or non-attorney who may help you obtain and submit records, explain medical terms, make requests, protect your rights, and present evidence in a light most favorable to your case. A representative may charge you for expenses such as obtaining and copying medical records, but may not charge and receive a fee unless I approve it. Representatives do not normally get paid unless I award benefits and then they only accept 25% of your back benefits or $6,000, whichever is less. Some legal service organizations offer free legal representation if you qualify under their rules, but this is usually need based and, of course, you may also choose to proceed today without a representative.

Now did you understand what I just said?

A       Except for where you started going into the money part. That – that I didn't understand.

Q       Okay. Well, and let me explain that. When you have what's the – the typical disability case for an adult or – or anyone hen they're filing –

A       Yes.

Q       -- it takes a while to get a hearing so there's – there's money that's to be paid out if they're awarded benefits. In your case, you're still receiving benefits so nothing;s – nothing's backing up. There's no backing that's being piled up in case you get awarded and that's – the attorney's generally get paid out of that money that would be in – in waiting I guess and there's – there's not this in this case. That's probably why you're having trouble getting anyone to take your case.

A       Oh, okay.

12

> Q  So – and then the other part was about organizations like Legal Services and it sounds like your grandma has tried that route also.
>
> A  Yes.
>
> Q  Okay. Well, based on that, what you know, do you want to go ahead and proceed today?
>
> A  Yes, sir.
>
> Q  Okay. And, ma'am, let me – let me just assure you that I'm – I'm here also to protect your rights. I'm going to make sure I ask questions and – and give you every opportunity to tell what you want to tell. Okay?
>
> A  Okay.

(ECF No. 10, pp. 45-46). The ALJ asked Plaintiff multiple times, in an open-ended manner, to describe all of her physical and mental impairments. (ECF No. 10, pp. 48-50). Plaintiff never cited visual problems. She stated that she was not doing well in school, that her leukemia had been in remission for five years, and that she suffered chronic headaches, severe depression, and back pain. (ECF No. 10, pp. 48-49). Plaintiff further stated that her sinus problems primarily caused headaches, "but the sinus headaches have been taken care of mostly by sinus medicine," and that her chronic headaches are the result of her family history and prior leukemia treatment. (ECF No. 10, p. 49). The ALJ asked:

> Q  All right. Anything else before we call your grandmother in here?
>
> A  No, that's all that I know of.
>
> Q  Okay. Go ahead. Did you have something to say?
>
> A  That's all that I know of.
>
> Q  Okay. All right.

(ECF No. 10, pp. 49-50). Plaintiff gave the ALJ up to date records at the administrative hearing. (ECF No. 10, pp. 58-59). At the beginning of the hearing, the ALJ gave Plaintiff a disk

13

containing her medical records which the Administration compiled in her case. (ECF No. 10, pp. 42-43). The ALJ and Plaintiff had the following exchange:

>   Q   [Plaintiff], do you have a computer at home where you can look at that disk?
>
>   A   Yes, sir.
>
>   Q   Okay. Well, ma'am, just to make sure you're seeing everything, I'm going to give you five days to look at that disk and to call our office if you see anything on there you don't think is correct or if you have an objection to any of that. Okay?
>
>   A   Yes, sir.
>
>   Q   And if you have trouble opening up that disk, you call the office here in Fort Smith and get them to talk you through it. They can tell you how to open it up, but you should be able to do it.
>
>   A   Okay.

(ECF No. 10, p. 43). The ALJ had the same conversation with Plaintiff's grandmother near the end of the hearing after she provided her testimony. (ECF No. 10, pp. 59-60). Before closing the hearing, the ALJ, Plaintiff, and Plaintiff's grandmother had the following exchange:

>   ALJ   Now in the meantime before you get the decision, if you go to any doctor appointments or get anymore letters from doctors to – to say what problems she's having, I would welcome any – any of those things. Just send them down here and make sure you've got good notes on them, you know, what file it's supposed to go to. Okay?
>
>   WTN   Okay.
>
>   ALJ   All right. Any questions at all?
>
>   WTN   Do you have any? No?
>
>   CLMT  No, I –
>
>   WTN   No.
>
>   CLMT  By the way you explained it, I understood it. So I'm good.

14

> ALJ      Okay. Well, let me tell you this, if – if later on you think of something, have any questions at all, don't hesitate to call down here and ask and they'll get a message to me. Okay?
>
> CLMT     Okay.
>
> WTN      Okay. We can do that.

(ECF No. 10, p. 64). The ALJ provided Plaintiff every reasonable opportunity to supplement the record. Moreover, despite Plaintiff's contention that the ALJ did not fully and fairly develop the record, Plaintiff offered no additional records for review by the Appeals Council or this Court.

To the extent Plaintiff argues the ALJ should have incorporated Plaintiff's alleged visual impairment into the RFC determination, this Court finds substantial evidence supports the ALJ's determination Plaintiff's severe impairments did not include a visual impairment and the ALJ's determination to form an RFC without limitations regarding Plaintiff's vision. Moreover, based on the foregoing and a thorough examination of the record as a whole, this Court finds the ALJ satisfied his duty to fully and fairly develop the record. The ALJ had before him the evaluations and treatment records of numerous healthcare providers which provided sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's alleged impairments. The Court also notes that other evidence in the record, including Plaintiff's own statements, constituted evidence regarding her limitations, and that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding Plaintiff's RFC.

The ALJ properly accounted for Plaintiff's alleged impairments in his RFC determination. First, Plaintiff's leukemia had been in remission for five years at the time of Plaintiff's administrative hearing. (ECF No. 10, p. 48). Next, Plaintiff stated her sinus surgery

15

and medication had "mostly" taken care of her sinus headaches. (ECF No. 10, p. 49). Plaintiff alleged limitation with her memory, and evidence in the record confirmed Plaintiff suffered deficits in the areas of reading comprehension and her memory retention. (ECF No. 10, pp. 49, 1129-33). Dr. McInroe opined "Multiple presentation of stimuli can increase her memory functioning. Writing, reading, and saying aloud can effectively improve one's auditory memory skills." (ECF No. 10, p. 1133). The ALJ, therefore, limited Plaintiff to work involving simple, routine, and repetitive tasks involving only simple, work related decisions. (ECF No. 10, pp. 26-31, Finding 4). Plaintiff also argues the ALJ should have included environmental limitations in his RFC determination. (ECF No. 11, p. 6). Plaintiff cites to no evidence of functional limitation related to exposure to environmental factors, however, and any potential error to include such limitation in the RFC determination is harmless as the jobs the ALJ identified the Plaintiff could perform do not involve exposure to environmental factors. See DOT 239.567-010, 1991 WL 672232 (1991); DOT 209.687-026, 1991 WL 671813 (1991); DOT 209.587-034, 1991 WL 671802 (1991). Finally, Plaintiff alleged limitation based on her alleged mental impairments, and evidence in the record, namely Plaintiff's long history of mental health treatment throughout the years, confirmed Plaintiff's amnestic disorder, cognitive disorder, and depression. The ALJ limited Plaintiff to no more than incidental contact with coworkers, supervisors, and the general public, consistent with the treatment notes in those records, as well as the opinion of Dr. McInroe, who noted Plaintiff used somatization as a defense mechanism, exhibited social stress and anxiety, and was at risk for aggression. (ECF No. 10, pp. 26-27, 1131).

Plaintiff cites to no additional evidence she was more limited than accounted for by the ALJ's RFC determination. Plaintiff primarily argues the ALJ failed to fully and fairly develop

the record with regard to the physical and mental portion of her RFC. (ECF No. 11, pp. 6-8). As discussed previously, Plaintiff's argument is unavailing. It is clear Plaintiff suffers with some degree of limitation and pain. This Court notes, however, that the inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. See Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991).

The Court notes that in determining Plaintiff's RFC, the ALJ considered the treatment notes and medical opinions of many treating physicians, consultative examiners, and specialists, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (8th Cir. 2000) (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### C. Hypothetical Questions to the VE

Plaintiff states, without argument, that substantial evidence does not support the ALJ's finding at step five of the sequential evaluation process. (ECF No. 11, p. 1). Plaintiff's statement cites only that the ALJ failed to account for several of Plaintiff's limitations, which is essentially an argument that the ALJ's RFC determination was inadequate. Id. The hypothetical the ALJ posed to the VE fully set forth the impairments that the ALJ accepted as

true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the work of an office helper, mail room sorter, or a merchandise marker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from a VE based on a properly phrased hypothetical question constitutes substantial evidence).

**IV.  Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that the Plaintiff's Complaint should be, and is hereby dismissed with prejudice.

IT IS SO ORDERED this 22nd day of August, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE